## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TIMOTHY CURTIS,** | : | **CIVIL ACTION NO. 1:18-CV-2369** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **SPRING CREEK SNF, LLC,** | : | |
| | : | |
| **Defendant** | : | |

## <u>MEMORANDUM</u>

Plaintiff Timothy Curtis commenced this action against his former employer, defendant Spring Creek SNF, LLC ("Spring Creek"), asserting claims of sex discrimination under Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e-2, and the Pennsylvania Human Relations Act ("PHRA"), 43 PA. STAT. & CONS. STAT. ANN. §§ 951-963.  (Doc. 1).  Spring Creek moves for summary judgment. For the reasons that follow, we will grant Spring Creek's motion.

## I.      <u>Factual Background & Procedural History</u>[1]

Curtis is the former Director of Maintenance at Spring Creek.  (Doc. 16-1 ¶ 1). Spring Creek operates the Spring Creek Rehabilitation and Nursing Center (the

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."  M.D. PA. L.R. 56.1.  A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried.  Id.  Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts.  (See Doc. 16-1; Doc. 20).  To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the statements of material facts.

"Center") in Harrisburg, Pennsylvania.  (Doc. 1 ¶ 6; Doc. 8 ¶ 6).  Spring Creek is a Pennsylvania limited liability company.  (Doc. 1 ¶ 6; Doc. 8 ¶ 6).

### A.    Curtis's Hiring, Suspension, and Termination

On May 15, 2015, the Center hired Curtis as an at-will employee to the position of Director of Maintenance.  (Doc. 16-1 ¶¶ 1-2).  Curtis was responsible for the Center's facility maintenance and for directly managing five employees.  (Id. ¶ 3).  He reported to Tammy Clabaugh, the Center's administrator.  (Doc. 16-1 ¶ 6; Doc. 17-1, Ex. C, Timothy Curtis Dep. at 17:5-7).

Curtis's responsibilities included ensuring functional equipment, making repairs, and resolving work orders.  (Doc. 16-1 ¶ 4).  He was also required to "make written [reports], oral reports[,] and recommendations to the administrator as necessary or required concerning operations of the maintenance department."  (Id. ¶ 5).  One of Curtis's other "essential functions" was to "[r]eview and develop a plan of correction for maintenance deficiencies noted during survey inspections and [to] provide a written copy of such to the administrator."  (Curtis Dep. 16:24-17:4).

On May 16, 2016, Triangle Fire Protection ("Triangle") inspected the Center.  (Doc. 16-1 ¶ 7).  Triangle's inspector informed Curtis that the pump motor for the Center's sprinkler system was out of order and in need of replacement.  (Id. ¶ 8; Curtis Dep. 22:2-11).  Curtis did not notify Clabaugh or anyone else at Spring Creek that Triangle's inspection revealed a faulty sprinkler system.  (Doc. 16-1 ¶ 9; Doc. 17-1, Ex. B ¶ 14).  At his deposition, Curtis admitted that he did not inform Clabaugh of the results of the inspection—Curtis "felt that it was within [his] purview to still

remedy the situation because the system was not malfunctioning." (Curtis Dep. 22:17-23).

After the Triangle inspection, toward the end of May 2016, the Center was inspected by the Department of Health's Life Safety Division. (Doc. 16-1 ¶ 11). Inspectors learned that the sprinkler system was out of service and notified Clabaugh of the defect. (Id. ¶¶ 12-13). At his deposition, Curtis described Clabaugh's principal concerns flowing from the failed inspection, namely, that Department of Health may deem the fire system inoperable and that the matter "was not brought to her attention" earlier. (Curtis Dep. 15:23-16:3). Curtis told Clabaugh that the Triangle inspector verbally advised him that the sprinkler system would function notwithstanding the broken motor and that Spring Creek could bypass the pump. (Doc. 16-1 ¶ 14). Triangle later emailed Clabaugh to confirm that the system was functional, despite its faulty pump. (Id. ¶ 15). The sprinkler system's functionality is critical because, as Curtis confirmed, "a lot of the people who reside at Spring Creek are not mobile, so if there's a fire it could be a serious disaster." (Curtis Dep. 20:21-21:6-9).

On May 31, 2016, Curtis received an "Employee Discipline Report" and was suspended. (Doc. 1-3). The report cited Curtis's negligent failure to notify Clabaugh of the out-of-service pump as reason for his punishment. (Id.) More precisely, the "Employer Statement of Violation" stated: "Negligent in reporting to [Clabaugh] that on 5-16-16 Triangle Fire Protection inspection revealed that the fire pump for South building was deemed out of service." (Id.) The report was labeled as a "final decision" and Curtis's offense was categorized under "Level of Offense -

Group III." (Id.)  Under the "Employee's Statement" portion of the report, Curtis checked the box that read "I agree with Employer's statement."  (Id.)  Curtis was issued a three-day suspension "Pending Investigation."  (Id.)  Curtis, Clabaugh, and a human resources representative each signed the report.  (Id.)  Under Spring Creek's corporate policy, employees found to have committed a "[f]irst [c]ritical [o]ffense" that qualifies as a Group III offense are eligible for immediate termination.  (Doc. 17-1, Ex. D at 8).

On June 6, 2016, after serving his suspension, Curtis was fired.  (Doc. 16-1 ¶¶ 25-26).  The next day, Curtis received a second "Employee Discipline Report" notifying him that he was being terminated for his "[f]ailure to report equipment failure to the Administrator."  (Doc. 1-4).  The June 6 report did not identify the level of offense or the type of offense, (id.), but the "Employee Termination Slip" filed in conjunction with his firing noted that he was terminated for his "work perf." and for "failing to inform super. that critical equip. is broken," (Doc. 17-1, Ex. E).

**B.    Alleged Sex Discrimination**

Curtis alleges that Spring Creek discriminated against him because of his sex and terminated him in violation of Title VII.  (See Doc. 1).  He identifies two female employees he claims were treated more favorably after committing what he believes to be comparable violations.  (Doc. 16-1 ¶ 30).  The first comparator is an unnamed certified nursing assistant who is said to have wrongfully allowed a Spring Creek resident to leave the Center through an employee-only access point.  (Curtis Dep. 34:15-35:4).  The certified nursing assistant role differs from a director position: certified nursing assistants have different day-to-day responsibilities, they do not

report to Clabaugh, and they do not have supervisory responsibility.  (Doc. 16-1 ¶¶ 31-33; Curtis Dep. 36:16-22).  The second comparator is a receptionist who allowed a Spring Creek resident to exit the Center in a wheelchair.  (Curtis Dep. 37:5-10). Like certified nursing assistants, the receptionist position is different from a director position and receptionists do not have supervisory responsibility.  (Doc. 16-1 ¶ 34; Curtis Dep. 37:17-38:3).  Both parties agree that Curtis was in a substantially higher-level position than either the certified nursing assistant or the receptionist. (Doc. 16-1 ¶ 35; Doc. 20 ¶ 35).

After Curtis was fired, he was replaced by a male who had previously worked for Spring Creek.  (Id. ¶ 37; Curtis Dep. 33:20-34:4, 87:5-22).  During its own investigation into Spring Creek's alleged discrimination, the Pennsylvania Human Relations Commission determined that Spring Creek discharged eight female certified nursing assistants and one female admissions employee between 2015 and 2016.  (Curtis Dep. 42:25-43:7; Doc. 17-1, Ex. A at 4).  The Commission ultimately concluded that "[t]here is no evidence to support [Curtis's] claim that [Spring Creek] did not suspend or discharge female employees who violated [Spring Creek's] policies."  (Doc. 17-1, Ex. A at 4).

### C.   Procedural History

Following his termination, Curtis filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging a Title VII violation against Spring Creek.  (Doc. 1 ¶ 10; Doc. 8 ¶ 10).  Curtis dual-filed his complaint with the Pennsylvania Human Relations Commission.  (Doc. 1 ¶ 10; Doc. 8 ¶ 10).  The EEOC investigated Curtis's charge before dismissing his claim and issuing a right-

to-sue letter.  (Doc. 1-2).  He thereafter filed suit in this court.  At the close of discovery, Spring Creek moved for summary judgment.  The motion is fully briefed and ripe for disposition.

## II.   Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality.  FED. R. CIV. P. 56(a).  The burden of proof tasks the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The court is to view the evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor."  Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986).  Only if this threshold is met may the cause of action proceed.  See Pappas, 331 F. Supp. 2d at 315.

## III.   Discussion

Curtis claims that Spring Creek discriminated against him based on his sex in violation of Title VII and the PHRA.  Spring Creek moves for summary judgment, arguing that Curtis's claim cannot survive the McDonnell Douglas burden-shifting analysis.  (See Doc. 17).  Curtis opposes Spring Creek's motion.  (See Doc. 21).

Title VII makes it unlawful for employers "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The PHRA also makes it unlawful for "any employer because of the . . . sex . . . of any individual . . . , to refuse to hire or employ or contract with, . . . or to otherwise discriminate against such individual . . . with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract." 43 PA. STAT. AND CONS. STAT. ANN. § 955. PHRA claims are reviewed under the same standards as Title VII claims. See Connelly v. Lane Constr. Corp., 809 F.3d 780, 791 n.8 (3d Cir. 2016) (citing Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 317 n.3 (3d Cir. 2000)).

Curtis has not offered direct evidence of sex discrimination, so our inquiry is governed by the McDonnell Douglas three-step analysis. See Burton v. Teleflex Inc., 707 F.3d 417, 425-26 (3d Cir. 2013) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973)) (other citations omitted). First, we determine whether the plaintiff states a *prima facie* case of discrimination. See Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994) (quoting McDonnell Douglas, 411 U.S. at 802). Second, if the plaintiff states a *prima facie* case, the burden of production shifts to the employer to identify a "legitimate, nondiscriminatory reason" for its conduct. See id. (quoting McDonnell Douglas, 411 U.S. at 802). Third, if the employer meets its burden at step two, the burden shifts back to the plaintiff to show that the

employer's reason is pretextual.[2]  See id.  Curtis must ultimately prove that sex was

a determinative factor in Spring Creek's decision to terminate him using this

burden-shifting framework.  See id. at 764; see also Tex. Dep't of Cmty. Affairs v.

Burdine, 450 U.S. 248, 254 (1981); Connelly, 809 F.3d at 788 (citation omitted).

### A.    *Prima Facie* Case

To state a *prima facie* discrimination claim under Title VII, Curtis must

establish that (1) he is a member of a protected class, (2) he was qualified for the

relevant position, (3) he suffered an adverse employment action, and (4) the

circumstances could give rise to an inference of discrimination.  See Makky v.

Chertoff, 541 F.3d 205, 214 (3d Cir. 2008) (citing McDonnell Douglas, 411 U.S. at 802;

Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1066 n.5 (3d Cir.1996) (*en*

*banc*)); Burton, 707 F.3d at 426.  Spring Creek challenges only the fourth prong.

Curtis argues that he has established an inference of discrimination because "his

discipline was so severe for a first offense and when compared to the discipline of

the two females he believes that this discipline disparity was based on gender."

(Doc. 21 at 3).  In other words, Curtis believes that he was treated less favorably

than members of the opposite sex.

---

[2] Curtis contests only the *prima facie* prong (and, arguably, the pretext
element).  (See Doc. 21 at 3).  Under Rule 56(c) and well-developed case law, we may
deem unopposed or waived all arguments not addressed in Curtis's opposition to
Spring Creek's summary judgment motion.  See James v. Tri-Way Metalworkers,
Inc., 189 F. Supp. 3d 422, 439 (M.D. Pa. 2016) (citing Sikkelee v. Precision Airmotive
Corp., 2011 WL 1344635, at *4 (M.D. Pa. 2011) (collecting cases)).  We will
nonetheless address each prong of the McDonnell Douglas test.

Discrimination may be inferred by, *inter alia*, showing that an employer treated similarly situated "comparator" employees outside of the protected class more favorably than the plaintiff, see <u>Mandel v. M & Q Packaging Corp.</u>, 706 F.3d 157, 170 (3d Cir. 2013) (citing <u>Pivirotto v. Innovative Sys., Inc.</u>, 191 F.3d 344, 358-59 (3d Cir. 1999)), or that the plaintiff's position was filled by a person outside of their protected class, see <u>Jones v. Sch. Dist. of Phila.</u>, 198 F.3d 403, 410-11 (3d Cir. 1999) (citation omitted).  Neither party disputes that Curtis was replaced by a male, providing some evidence that his firing was not a reflection of sex-based animus. Spring Creek also argues that the purportedly similarly-situated females on whom Curtis bases his claim are not sufficiently analogous.

Before evaluating Curtis's proffered comparators, we address his arguments regarding the propriety of comparator-based analysis at the *prima facie* stage. First, Curtis claims that comparator evidence is not properly within the scope of the *prima facie* inquiry.  (Doc. 21 at 3-4 (citing <u>Marzano v. Comput. Sci. Corp., Inc.</u>, 91 F.3d 497, 510 (3d Cir. 1996))).  In support, he cites the Third Circuit's <u>Marzano</u> decision, which held that "arguments as to the employee's uniqueness should be considered in conjunction with, and as part of, the employer's rebuttal—not at the *prima facie* stage."  <u>Marzano</u>, 91 F.3d at 511 (citing <u>Healy v. N.Y. Life Ins. Co.</u>, 860 F.2d 1209, 1214 n.1 (3d Cir. 1988)).  Curtis reads <u>Marzano</u>'s holding too broadly. <u>Marzano</u> limited its discussion of the *prima facie* showing to reduction-in-workforce cases, in which plaintiffs attempting to establish an inference of discrimination must identify a similarly situated individual retained by the employer.  <u>Id.</u> (discussing "the test that this Court has articulated in the past to establish a *prima*

*facie* case . . . in a reduction-in-force context"); Lula v. Network Appliance, Inc., 245 F. App'x 149, 151-52 (3d Cir. 2007) (nonprecedential) (discussing Marzano in the reduction-in-workforce context);[3] see also Monaco v. Am. Gen. Assur. Co., 359 F.3d 296, 301 (3d Cir. 2004) (articulating *prima facie* standard in reduction-in-workforce context).  Only after the plaintiff has done so is the comparator's uniqueness evaluated.  Outside the reduction-in-workforce context, the Third Circuit routinely addresses comparator-based arguments as part of the *prima facie* analysis.  See, e.g., Durst v. City of Philadelphia, 798 F. App'x 710, 713 (3d Cir. 2020) (nonprecedential); Mandel, 706 F.3d at 170; Warfield v. SEPTA, 460 Fed. App'x 127, 130 (3d Cir. 2012) (nonprecedential); McCullers v. Napolitano, 427 F. App'x 190, 194-95 (3d Cir. 2011) (nonprecedential).[4]  We therefore conclude that, in this context, we may consider comparator evidence at the *prima facie* stage.

Second, Curtis contends that the similarly situated inquiry is too exacting—that it wrongly requires comparator employees to be "nearly identical" to the plaintiff.  (Doc. 21 at 3 (citing Marzano, 91 F.3d at 510)).  But Third Circuit case law

---

[3] The court acknowledges that nonprecedential decisions are not binding upon federal district courts.  However, we cite these nonprecedential decisions because we have carefully considered each decision and we are persuaded by each panel's *ratio decidendi*.

[4] True, some decisions have reviewed comparator evidence as part of the pretext prong.  See, e.g., Wilcher v. Postmaster Gen., 441 F. App'x 879, 882 (3d Cir. 2011) (nonprecedential); Doe v. Apria Healthcare Grp. Inc., 97 F. Supp. 3d 638, 644-46 (E.D. Pa. 2015).  But we do not understand those decisions to *preclude* consideration of comparators at the *prima facie* stage.  Instead, we read those decisions to permit consideration of comparators as relevant to pretext in addition to the *prima facie* inquiry.

is clear: comparators need only be "similar in all relevant respects." Durst, 798 F. App'x at 713 (citing Johnson v. Kroger Co., 319 F.3d 858, 867 (6th Cir. 2003)); see also Wilcher, 441 F. App'x at 882 (citing Russell v. Univ. of Toledo, 537 F.3d 596 (6th Cir. 2008); Lee v. Kan. City S. Ry. Co., 574 F.3d 253, 259-61 (5th Cir. 2009)).

We now evaluate whether Curtis has offered comparators "similarly situated in all relevant respects." Wilcher, 441 F. App'x at 882 (citations omitted). To determine whether a comparator is similarly situated, we consult a nonexclusive list of factors, including "the employees' job responsibilities, the supervisors and decision-makers, and the nature of the misconduct engaged in." Id. (citing Lee, 574 F.3d at 259-61; Burks v. Wis. Dep't of Transp., 464 F.3d 744, 751-52 (7th Cir. 2006)); Mandel, 706 F.3d at 170 (citing Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 358-59 (3d Cir. 1999)) ("[A]n employee who holds a different job in a different department is not similarly situated."). We also ask whether the "employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." McCullers, 427 F. App'x at 195 (quoting Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-18 (7th Cir. 2000) (overruled on other grounds)).

There is no genuine dispute that the two female comparators identified by Curtis—a certified nursing assistant and a receptionist—are not similarly situated. Both comparators' roles are substantially different from Curtis's director position. Certified nursing assistants have different day-to-day responsibilities, they do not report to Clabaugh, and they do not have supervisory responsibility. (Doc. 16-1

¶¶ 31-33; Curtis Dep. 36:16-22).  The receptionist position is also materially different from a director position in terms of duties, responsibilities, and supervisory obligations.  (Doc. 16-1 ¶ 34; Curtis Dep. 37:17-38:3).  Indeed, it is undisputed that Curtis was in a higher-level position than both the certified nursing assistant and the receptionist.  (Doc. 16-1 ¶ 35; Doc. 20 ¶ 35).  The comparators' misconduct is also fundamentally different.  Curtis failed to inform his supervisor of a safety hazard that could have caused widespread harm to the Center's residents.  The two comparators, on the other hand, were reprimanded for infractions concerning ingress and egress to the facility.  Although each comparator's infraction may have endangered an individual resident, the scope of Curtis's misconduct—failing to report defects in the Center's sprinkler system—differs in both kind and degree.

We therefore conclude that Curtis has not established an inference of discrimination and has not met his burden of establishing a *prima facie* case.  In the exercise of caution, we will address the remaining steps of the <u>McDonnell Douglas</u> analysis.

###   B.   Legitimate, Nondiscriminatory Reasons

Assuming *arguendo* that Curtis has set forth a *prima facie* discrimination case, the burden of production shifts to Spring Creek to offer a legitimate, nondiscriminatory reason for the adverse action.  The employer need only "introduce[e] evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision."  <u>Fuentes</u>, 32 F.3d at 763 (citing <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 509 (1993)).  Spring Creek easily satisfies this burden.  It offers evidence that Curtis was

suspended and ultimately fired for negligently failing to inform his supervisor of the Center's faulty pump.  (Doc. 1-3; Doc. 1-4).  Curtis did so despite his clear obligation to report any major deficiencies to his supervisor.  (See Doc. 16-1 ¶ 5; Doc. 17-1, Ex. C; Curtis Dep. 16:24-17:4).  And, according to Spring Creek's employee handbook, termination is an appropriate response to a violation of this magnitude.  (See Doc. 17-1, Exs. D, E; Doc. 16-1 ¶ 24; Curtis Dep. 32:22-33:8).  If true, Spring Creek's justification is unrelated to Curtis's sex.

### C.    Pretext

Lastly, Curtis must produce evidence from which a factfinder could reasonably infer that Spring Creek's articulated legitimate, nondiscriminatory justification is a pretext for discrimination.  See Fuentes, 32 F.3d at 764-65.  To establish pretext, plaintiffs must point to evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  Id. at 764.  That is, Curtis "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'"  Burton, 707 F.3d at 426 (quoting Fuentes, 32 F.3d at 765).

Curtis claims that Spring Creek's justification for firing him is pretext for sex discrimination.  He specifically argues that his discipline was too severe when compared to that given to other female employees.  (Doc. 21 at 3).  As we explained above, differential treatment of two distinguishable female employees reprimanded

for wholly different conduct is not persuasive evidence of discriminatory intent. The two female employees held different roles, reported to different supervisors, and engaged in different misconduct. Their treatment is simply insufficient to prove that Curtis's firing was pretext for sex discrimination.

To the extent Curtis argues that Spring Creek's treatment of him is a reflection of its broader employment practices towards men, the record provides no support. The record establishes that Spring Creek fired women in addition to men. (Doc. 16-1 ¶ 36; Doc. ¶ 36).[5] And any argument that Spring Creek discriminated against Curtis because of his sex is further refuted by the fact that Curtis was replaced by a man, not a woman. (Doc. 16-1 ¶ 37; Doc. 20 ¶ 37).

Setting aside comparator evidence, Curtis cites no record evidence and offers no factual basis by which a fact finder could conclude that Spring Creek's reasons are illegitimate or that its decision to terminate Curtis was rooted in discriminatory bias. Curtis's argument instead appears to be based on his subjective belief that Spring Creek was unduly harsh and that his punishment was the result of discrimination. (See Doc. 21 at 3 ("[Curtis] did not believe that under the

---

[5] In its statement of undisputed material facts, Spring Creek explains that the company fired nine female employees between 2015 and 2016. (Doc. 16-1 ¶ 36). Curtis contends that this statistic is irrelevant because Spring Creek "did not provide the number of male employees terminated during the same period of time." (Doc. 20 ¶ 36). While we agree that this figure does not include male terminations, we disagree with Curtis that it should be disregarded. The parties engaged in discovery, during which Curtis could have requested information regarding the total number of men and women fired by Spring Creek. It is the plaintiff's responsibility, not the defendant's, to establish facts through discovery that undermine the employer's offered justifications for an adverse action. See Fuentes, 32 F.3d at 764; see also FED. R. CIV. P. 56(c).

circumstances he should have been disciplined."); id. "([H]e felt that he was discriminated against because of his gender.")).  This argument is unavailing.  The Third Circuit has repeatedly instructed that "[t]o discredit the employer's proffered reason . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Fasold v. Justice, 409 F.3d 178, 185 (3d Cir. 2005) (internal quotation marks omitted) (quoting Fuentes, 32 F.3d at 765).  Curtis fails to do more than dispute whether Spring Creek's decision to suspend and subsequently fire him was sensible under the circumstances.  And a plaintiff's mere suspicion of discrimination, without more, does not create a genuine dispute of material fact to defeat summary judgment.  See Ramara, Inc. v. Westfield Ins. Co., 814 F.3d 660, 666 (3d Cir. 2016) (citing Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 228 (3d Cir. 2009)) ("[T]he non-movant may not rest on speculation and conjecture in opposing a motion for summary judgment."); Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990).  Accordingly, even if Curtis had established a *prima facie* case of discrimination, he has failed to show that Spring Creek's proffered reasons for terminating him were pretext for discrimination.

**IV.    <u>Conclusion</u>**

The court will grant Spring Creek's motion (Doc. 16) for summary judgment.

An appropriate order shall issue.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania


Dated:    September 25, 2020